

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

LTG:CAO

*610 Federal Plaza*
*Central Islip, New York  11722*

May 4, 2011

**VIA HAND DELIVERY AND ECF**

The Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
920 Federal Plaza
Central Islip, New York 11722

    Re:  United States v. Michael Romano, et al.
          Criminal Docket No. 09-168 (JFB)

Dear Judge Bianco:

    The government writes in response to defendant Michael Romano's ("Romano") May 3, 2011 letter motion to exclude the court-ordered Rule 15 deposition testimony of Donna Carlson. Romano seeks to exclude the testimony on two grounds: (1) he did not receive Ms. Carlson's written medical records and (2) he had not received the expert opinions of coin valuation experts.  As discussed more fully below, the government has never had those medical records but nonetheless communicated Ms. Carlson's dire health condition to the defense.  Similarly, the expert opinions were not a valid subject for cross examination of a lay victim-witness and the opinions did not even exist at that time.

BACKGROUND

    The defendants are charged with defrauding the numerous customers of their businesses: Wall Street Rare Coins, Atlantic Coin Gallery and Northeast Gold & Silver.  Donna Carlson, who purchased approximately 920 coins from Atlantic Coin Galleries between September 2004 and September 2006, was one of their victims.  Ms. Carlson, who lived in Minnesota, paid in excess of $200,000 for the coins and has maintained the coins in their original packaging.  In March of 2010, Ms. Carlson was eighty-eight years old and was terminally ill, suffering from pancreatic cancer.

On March 5, 2010, the government submitted a letter requesting that the Honorable Thomas C. Platt order a Rule 15 deposition of Ms. Carlson. In that letter, the government communicated the terminal nature of Carlson's illness and also the fact that travel could hasten her demise. The government attached a letter from Ms. Carlson's treating physician, who echoed those concerns. The treating physician's name, telephone number and address are still visible at docket item 103.

On March 30, 2010, after Judge Platt granted the government's motion, Romano submitted a discovery letter. See docket item 108. The letter, inter alia, requested a list of all documents relating to the appraisal of Carlson's coins, a list of all of Ms. Carlson's medical conditions and all records relating to those medical conditions. At an April 7, 2010 status hearing, Judge Platt confirmed the deposition schedule and the parties confirmed that discovery had been provided. In fact, as confirmed by Romano's letter, an appraisal was provided before the hearing. See May 3, 2011 Romano Letter at 2-3. The appraisal had been done at the request of Ms. Carlson and her family. Ms. Carlson had never reviewed the third party grading and pricing report concerning her coins performed by the government's two expert witnesses.

The defendants did not request any adjournment of the deposition.[1] At the deposition, the defendants asked no questions about Atkins' coin appraisal. The defendants did not request another deposition.

Ms. Carlson has since died.

II. Applicable Law

Romano's motion does not touch upon the law regarding Rule 15 depositions. See, e.g., United States v. Johnpoll, 739 F.2d 702 (2d Cir. 1984); United States v. Singleton, 460 F.2d 1148 (2d Cir. 1972). Instead, the motion relies upon the government's Brady/Giglio discovery obligations. Against that narrower legal backdrop, Romano's requests are easily addressed.

---

[1] Although Romano's letter mentions the presence of Ms. Carlson's son at the deposition, see May 3, 2011 Romano Letter at 2-4, Romano does not use that detail as one of the bases for the instant motion. It bears noting that this issue was litigated and decided by Judge Platt on May 3, 2010. See docket item 118.

A.   Medication

The government never possessed the requested medical records or information.  The government is never required to provide discovery of documents that it does not possess.  See, e.g., United States v. Yousef, 327 F.3d 56, 129-130 (2d Cir. 2003).  Those obligations only require disclosure of information in the government's exclusive possession.  United States v. Rigas, 583 F.3d 108, 126 (2d Cir. 2009).  With regard to evidence that is not in its exclusive possession, the outer limits of the government's obligations require good faith efforts.  Yousef, 327 F.3d at 129-130.  The government has clearly satisfied that standard.  The government provided lists of illnesses, expressed the direness of Ms. Carlson's condition and even provided the name, address and phone number of her treating physician.  In short, everything the government had on this issue was disclosed.  Those steps demonstrate the government's good faith on this issue and negate the Brady/Giglio argument.  See United States v. Paulino, 445 F.3d 211, 224 (2d Cir. 2006) ("To establish a Brady violation, a defendant must show [inter alia, that] the evidence must have been suppressed by the State, either willfully or inadvertently.").

In a related argument, Romano suggests that he was effectively unable to question Ms. Carlson about her medications.  This argument is not supported by the deposition transcript:

    Mr. Searcarz:  Do you take any medications?
    Ms. Carlson:   None.

May 3, 2011 Romano Letter, Attachment D at 34-35 (the deposition transcript).

B.   Third Party Appraisals

Romano's second argument is similarly unavailing.  Romano argues that he could not effectively cross examine Ms. Carlson because he did not have the government's third party appraisals of Ms. Carlson's coins.

As an initial matter, the government cannot see how it would be appropriate to cross examine a fact witness with a third-party expert opinion.  An expert opinion on grading, and the processes used to reach that opinion, were never within Ms. Carlson's ken.  Accordingly, such suggested cross examination would be irrelevant, unduly confusing and procedurally improper.

To the extent that the defendants plan to cross-examine the other victims in this manner, the Court should issue a prophylactic order barring such questioning.

More importantly, these expert opinions did not exist at the time of the deposition. Therefore, again, Romano seeks to articulate a Brady/Giglio violation for information that the government did not possess. The motion has no legal or factual merit and should be denied.

C. Broad Discretion

Romano also requests broad latitude to admit extrinsic evidence to impeach the testimony of Ms. Carlson. See May 3, 2011 Romano Letter at1. As discussed above, the circumstances do not merit such broad latitude. However, until the defendants identify this evidence, it will be difficult for the Court or the government to respond.

III. Conclusion

Romano has requested information that was not in the possession of the government. Accordingly, no violation has occurred and the motion should be denied.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By:         /s/
Christopher A. Ott
Assistant U.S. Attorney
(631) 715-7870

cc. Maurice Sercarz, Esq.
    Michael Bachner, Esq.

-4-